IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY CO., | § | |
| Plaintiff, | § | |
| v. | § | 3:08-CV-1478-P |
| ROGER DAVIS D/B/A DAVIS CONSTRUCTION, | § | |
| Defendant, | § | |
| GLORIA SERRATO, et al., | § | |
| Defendant-Intervenors. | § | |

## MEMORANDUM OPINION AND ORDER

On May 10, 2010, the above captioned case was brought to trial before this Court. During the one day trial, both parties presented witnesses, evidence, and arguments. After careful consideration of the evidence, the applicable law, and the parties' arguments, the Court issues this Memorandum Opinion and Order memorializing the Court's findings of fact and conclusions of law.

I. **BACKGROUND**

A. The Parties

1. Plaintiff, Mid-Continent Casualty Company ("Plaintiff" or "Mid-Continent"), is a casualty lines insurance company duly formed and existing under the laws of the State of Ohio, the location of its principal place of business.

2. Defendant, Roger Davis an individual doing business as Davis Construction ("Defendant" or "Davis"), is the sole owner of Davis Construction.

3. Gloria Serrato intervened in this action in her own capacity and her capacity as the representative for the estate of Jorge Serrato and Yolanda Cornejo Lopez de Serrato and Jose Benjamin de Serrato (collectively "Intervenors").

B. Background & Procedural History

1. Jorge Serrato had been working on Davis Construction crews for approximately eighteen months prior to June 27, 2007. On June 27, 2007, Jorge Serrato ("Serrato") died after falling through a man-made hole on the second floor of the premises where he was working at the time of his death.

2. Signate Custom Homes was the General Contractor on the premises upon which Serrato was working at the time of his death.

3. Davis Construction was the framing contractor on those premises. Serrato was working as part of Davis Construction's framing crew at the time of the accident.

4. Mid-Continent issued a Comprehensive General Liability policy to Roger Davis d/b/a Davis Construction under a Comprehensive General Liability policy number GL 000660872 for the policy period of 1/24/07 to 1/24/08.

5. Policy number GL 000660872 was in effect on the date of Jorge Serrato's death.

6. Mid-Continent filed this action on August 21, 2008, seeking a declaratory judgment that Mid-Continent has no duty to indemnify Davis in a law suit numbered, 07-14127-A, styled, *Gloria Serrato, Individually and as Personal Representative of the Estate of Jorege Serrato and Yolanda Cornejo Lopez de Serrato and Jose Benjamin de Serrato v. Roger Davis d/b/a Davis Construction; Signate Custom Homes, Inc.' and Tommy Richie Construction, LLC, Individual and d/b/a Richie Construction*, filed in the County Court at Law No. 1 of Dallas County, Texas (the "Underlying Lawsuit").

7. Mid-Continent's duty to indemnify Davis – for liability arising from the Underlying Lawsuit – depends on whether Serrato was an independent contractor or an employee of Davis Construction at the time of his death.

8. Mid-Continent is defending Davis Construction in the underlying suit, subject to a reservation of rights.

9. There has been no judgment entered in the underlying suit adjudicating Davis liable for the death of Jorge Serrato.

C. Serrato's Relationship with Davis Construction

1. Davis Construction is in the business of framing buildings (typically residential homes). Davis obtains framing jobs for Davis Construction by placing a bid on a project with the general contractor. The amount of Davis'

bid was based in large part on the estimated length of time it would take to complete the framing work. When making this estimate Davis often consulted with Billy Ritchie ("Ritchie") who has been supervising Davis Construction's crew for nine to ten years and working on its crew for over twenty years. If Davis' bid was chosen, then Davis Construction would be awarded the subcontract for the framing work by the general contractor on a project.

2. Once awarded a subcontract, Davis and Ritchie would hire a crew for the job. Davis Construction only works on one job at a time, and therefore only uses one crew. Davis Construction's crew typically consists of four people in addition to Ritchie. Often the four workers on the crew remained the same for years. In June 2007, these four men were Vidal Negrete, Eduardo Negrete, Hector Sancheez, and Jorge Serrato.

3. Most of the workers have framing experience when Davis Construction hires them to be on the crew. A worker does not however, need framing experience to be hired as a worker on the crew. Prior to working on Davis Construction's crew, Jorge Serrato did not have framing experience. Once he was part of the crew, Jorge Serrato learned how to do the work by watching, asking questions, and learning from the other workers.

4. Davis Construction did not supply the crew with the tools needed to complete the work. Rather, each crew member had to use his own tools or borrow tools from one of the other people on the crew. The essential tools used by Davis Construction's crew included nail guns, a compressor for the nail guns, and circular saws. While more than one crew member may have owned a compressor for the nail guns, only one compressor was needed and used on each job. If a worker did not own or could not borrow a nail gun then that worker would be assigned to cut the wood.

5. Neither the workers nor Davis Construction was responsible for buying the wood used to frame a home as this was paid for by the builder. Placing the order for the wood however, would sometimes be Davis Construction's responsibility. If it was Davis Construction's responsibility to place the order for the wood, then this would be done by either Davis or Ritchie.

6. Though Ritchie supervised the crew, the particular task that each worker would perform when framing a home was often determined by the workers or the tools each worker had at the time. Davis did not supervise the details of the work being done, but he did try to go by the site on a daily basis to insure that the framing work was going to be completed on time and conform to the specifications of the subcontract.

7. Davis did not require the crew members to work certain hours or days – he only required that they complete the work on time. The days and hours

worked by the crew was determined by a variety of factors, including the weather, the work performed on the house by other subcontractors, and the deadline for completing the job. After taking these factors into account, the crew would agree on the days and hours that they would work in order to complete the job on time.

8. While the crew members were paid by the week, the amount each person made depended on the job and their experience – not the number of hours or days worked. Ritchie, as the supervisor, was paid substantially more than the other crew members. Similarly, the amount each individual crew member was paid often increased with the amount of time the worker had been on the crew. Nonetheless, the amount the crew members were paid varied from job to job, because Davis would only be paid the amount he bid for that job.[1]

9. Jorge Serrato was paid $300 - $400 a week depending on the job.

10. Davis paid the crew, including Jorge Serrato, by writing each individual a check. Ritchie would give each crew member their check which they would immediately endorse and give back to Ritchie in exchange for cash in the amount on the check.

11. Davis did not pay the crew when Davis Construction did not have a house to be framed. When Davis Construction did not have a job many of the crew members worked for other subcontractors, including framers.

12. Regardless of whether Davis Construction had a job, each crew member was free to be part of Davis Construction's crew and work another job provided that the framing was done on time. For example, even though a majority of Ritchie's income came from the work he did for Davis Construction he also had a side business framing and building homes.

13. For tax purposes, at the end of the year Davis did not issue the crew members a W-2; rather, Davis issued each crew member a 1099. Davis did not withhold any social security, federal withholding taxes, or Medicare from these payments he made to his crew. Nor did Davis pay the State of Texas unemployment taxes based on compensation being paid to any of his crew members.

14. In all of the years that Davis Construction has been in business, Davis has been claiming all of his workers are independent contractors – not employees – when submitting tax information to the Internal Revenue Service ("IRS"). In 1993, Davis Construction was audited by the IRS. At that time, Davis was

---

[1] While the Court recognizes that a change in the work to be performed which is made by the general contractor or builder may serve to change the amount Davis gets paid, such circumstances are irrelevant to the issues of this case.

issuing his workers 1099s and paying them in the same manner he was in June 2007. The IRS did not penalize or admonish Davis for claiming his workers as independent contractors.

15. The insurance policy that Mid-Continent issued for Davis Construction for the period of January 24, 2003 to January 24, 2004 states, "The insured [Davis Construction] has no employees; contract labor is utilized for the construction work." (Pl.'s Ex. 9.) This statement also appears in each of the yearly insurance policies Mid-Continent issued for Davis Construction for the periods between January 24, 2004 and January 24, 2008. (Pl.'s Ex. 5 – 8.)

16. The insurance audit summary for the policy year January 24, 2007 to January 24, 2008, states "The insured [Davis Construction] is a framing contractor, working within the DeSoto and Red Oak areas. Only residential jobs are performed; no commercial. The insured has no employees; contract labor is utilized for the construction work." (Defs.' Ex. 8.) This statement also appears in each of the preceding year's insurance audit summaries for the policy periods between January 24, 2003 and January 24, 2007. (Pl.'s Ex. 5 – 8.)

17. The relevant industry standard for subcontractor construction work is to treat crew members as independent contractors. Prior to Jorge Serrato's death, Mid-Continent casualty did just that – treated Davis Construction's workers as independent contractors.

## II. CONCLUSIONS OF LAW

Under Texas Law[2], "[t]he test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work." *Limestone Prod. Distribut., Inc. v. McNamara*, 71 S.W. 3d 308, 312 (Tex. 2002) (*citing Thompson v. Travelers Indem. Co.*, 789 S.W. 2d 277, 278 (Tex. 1990)). The Texas Supreme Court has provided five factors to assist in determining if the employer did, in fact, have the right to control. *Id.* These factors include "(1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except

---

[2] Because jurisdiction over this action is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, the Court applies Texas law to determine the relationship between Serrato and Davis Construction. *Newcomb v. North East Ins. Co.*, 721 F.2d 1016, 1017 (5th Cir. 1983).

about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job." *Id.* at 312 (*citing Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961)). Each of these factors aid in determining the right to control, but none of these factors are dispositive. Moreover, it is important to note that "the legal test for determining independent-contractor status in Texas is right to control, not comparison of control." *Id.*

The first *Limestone* factor, the independent nature of the worker's business, does very little to shed light on the Davis' right to control the crew's work. The nature of working as part of framing crew for a sub-contractor is that it requires someone to obtain the sub-contract and other crew members to complete the job. For this reason, Jorge Serrato and the other crew member's business does not appear to be independent in nature.

Nonetheless, the industry standard is to consider and treat the members of a framing crew as independent contractors. Pursuant to the industry standard, Davis has always treated the crew members like independent contractors. In so doing, Davis does not have control over whether the crew members work for other framing crews or even run their own framing business. .

The second *Limestone* factor, "the worker's obligation to furnish necessary tools, supplies, and materials to perform the job" weighs heavily in favor of finding that Jorge Serrato was an independent contractor. Jorge Serrato, like all members of the crew, was required to furnish the tools needed to perform the framing work. Though each individual crew member may not have owned every tool necessary to framing work, there is no evidence that Davis or Davis Construction ever provided any of the crew members with tools. A crew member that did not have a particular tool was responsible for borrowing a tool from another crew member or doing work that required a different tool.

Neither the crew members nor Davis were responsible for furnishing the materials needed to frame a home as this was the responsibility of the builder. While someone from Davis Construction may have had to place the order for the necessary materials, for all intents and purposes it was the builder -- not Davis Construction -- that furnished the crew with the materials needed. Because Davis Construction did not provide the worker's with the tools or materials needed to perform the framing work, the second *Limestone* factor weighs heavily in favor of finding that Jorge Serrato was independent contractor.

The third *Limestone* factor, "the worker's right to control the progress of the work except about final results," also supports a finding that Jorge Serrato was an independent contractor. It is true that Jorge Serrato and the rest of Davis Construction's crew had little -- to no discretion -- in determining the type of materials to be used, the time for completion, or the architectural layout of the framing. These limitations however, are not examples of ways that Davis controls the crew's work. Rather, these limitations are ways in which the general contractor controls the crew's work and the final results.

Aside from the limitations imposed on Davis Construction by the general contractor of a project, the business of working on Davis Construction's crew was quite independent. Jorge Serrato and his fellow crew members were free to choose when to start and stop work each day; the particular task each worker performed; and the tools to be used. While Davis did check-in on the progress of each job, he did so for the purpose of being able to report back to the contractor -- not to provide direction or supervise the framing progress. The crew's freedom and discretion over the details of the framing process demonstrates the independent nature of the crew's work and that Davis' lack of control over the worker's. This conclusion is bolstered when one considers the second *Limestone* factor.

At first glance, the fourth *Limestone* factor, "the time that the worker is employed," seems to weigh in favor of finding that Jorge Serrato and the other crew members were employees of Davis Construction. This is true, because often the same crew members were used by Davis Construction for many years. But, a closer look reveals that each crew members is only employed by Davis construction for the time that is takes to complete one job. After a job is complete, the crew member may be employed by Davis Construction for its next job. But there is no guarantees as to whether a crew member will be hired for the next job or that Davis Construction will even get another job.

In the eighteen months prior to his death, Jorge Serrato was hired to work on nearly every crew Davis Construction used. Jorge Serrato was not however, employed by Davis Construction once for eighteen months. Rather, Jorge Serrato was employed by Davis Construction several times over the course of eighteen months. Though the time it took to do each job varied, most jobs took approximately two weeks. Accordingly, Jorge Serrato typically was only employed by Davis Construction for two weeks. Being employed for two week time periods several times over the course of approximately eighteen months provides strong support for Defendant's position that Jorge Serrato was an independent contractor.

The final factor, "the method of payment, whether by unit of time or by the job," also provides strong support that Jorge Serrato and the other crew members were independent contractors. Just as the amount of time the crew members were employed depended on the job, the amount each crew member was paid also depended on the job. The crew members were paid by the week for each job, but the actual amount Davis would pay them depended largely on the

amount he would be paid for the entire job.³ Regardless of the number of hours or days the crew members worked in a week, the amount Davis agreed to pay them per week remained the same for that job. Because the amount each crew member was paid per week depended on the job, Davis' method of payment supports a finding that the crew members were independent contractors.

Moreover, nearly every aspect of the crews members payment provides support for the Defendant-Intervenor's position that Jorge Serrato was an independent contractor. First, Davis did not withhold any social security, federal withholding taxes, or Medicare from crew members pay. the payments he made to his crew. Second, Davis did not pay the State of Texas unemployment taxes based on compensation being paid to any of his crew members. And third, at the end of the year Davis issued each crew member a 1099. Accordingly, the fifth *Limestone* factor – like the second, third, and fourth factors – weighs heavily in favor of finding that Jorge Serrato was an independent contractor.

### III. CONCLUSION

For the reasons stated above, the Court declares that Jorge Serrato worked on Davis Construction's crew as an independent contractor – not an employee.

**IT IS SO ORDERED.**

Signed this 3rd day of January, 2011.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

³ Depending on the job, Jorge Serrato was paid anywhere from $300 - $400 a week.